IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AVADEL CNS PHARMACEUTICALS LLC, <br><br> Defendant. | C.A. No. 21-691 (GBW) |
| JAZZ PHARMACEUTICALS, INC. and JAZZ PHARMACEUTICALS IRELAND LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> AVADEL CNS PHARMACEUTICALS LLC, <br><br> Defendant. | C.A. No. 21-1138 (GBW) |
| JAZZ PHARMACEUTICALS, INC. and JAZZ PHARMACEUTICALS IRELAND LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> AVADEL CNS PHARMACEUTICALS LLC, <br><br> Defendant. | C.A. No. 21-1594 (GBW) |

**LETTER TO THE HONORABLE GREGORY B. WILLIAMS
FROM JEREMY A. TIGAN REGARDING JAZZ'S REQUEST TO
<u>STAY EXPERT DISCOVERY RELATED TO THE '963 PATENT</u>**

Dear Judge Williams:

This firm, together with Quinn Emanuel, represents Plaintiffs ("Jazz") in these matters. We write pursuant to the Court's Oral Order (D.I. 274)[1] and to request that the Court stay all expert discovery deadlines related to U.S. Patent No. 8,731,963 ("the '963 patent") while this Court's Order and Judgment (D.I. 232) requiring Jazz to request delisting of the '963 patent from the Orange Book is stayed by Order of the Federal Circuit Court of Appeal (D.I. 265).

**FACTUAL BACKGROUND**

Under the operative schedule (D.I. 240), Avadel would serve its opening expert report on validity, and Jazz would serve its opening expert report on infringement, for the '963 patent on January 17, 2023. Between January 17 and June 30, the parties would exchange two more rounds of expert reports and complete expert depositions.

But none of that discovery needs to be taken now. The '963 patent expired on December 17, 2022. The regulatory exclusivity associated with the '963 patent cannot extend beyond June 17, 2023. And so, by the time the expert discovery period closes, there will be no need to resolve infringement or validity of the '963 patent from either a patent or regulatory law perspective.

The parties dispute what should be done with the claims that involve the '963 patent in the meantime. When the parties first discussed the issue earlier this month, Avadel suggested that Jazz "dismiss all of its claims involving the '963 patent on December 18, 2022 in the event that [Avadel's product] has not been commercially launched as of that date." Ex. A (12.07 Letter from H. Yue). Believing it had the upper hand and delisting was imminent, Avadel couched its proposal as a suggestion that "the parties should cooperate to avoid any unnecessary work and expense." *Id.* But Jazz could not agree to Avadel's proposal because the Federal Circuit is presently deciding whether the '963 patent is properly listed in the Orange Book (and has stayed this Court's Order requiring delisting (*see* D.I. 265)). Even though infringement and validity of the '963 patent may not be resolved here, the appeal is still critical for determining (a) whether the FDA can take further action on Avadel's application, and (b) whether any other potential applicants need to certify against the '963 patent between now and June 2023. If Jazz were to "dismiss all of its claims involving the '963 patent" during the pendency of the appeal, Avadel could then argue that the appeal is moot and attempt to deprive Jazz of resolution on these items. *See, e.g.*, *PPG Indus., Inc. v. Valspar Sourcing, Inc.*, 679 F. App'x 1002, 1005 (Fed. Cir. 2017) (holding that a covenant not to sue that absolved the defendant "of any possible infringement of the subject matter of [the asserted] patents, necessitates [the] conclusion that the case is moot."). With the appeal pending, Avadel reversed course and said "the '963 patent should proceed on the current schedule for expert discovery and [would] not agree to stay expert discovery pending appeal." Ex. B (12.19 Email from H. Yue).[2] But as set forth herein, there is

---

[1] All citations to the Court's docket refer to Civil Action No. 21-691.

[2] Avadel took that same position on the parties' December 21, 2022 verbal meet-and-confer that preceded the instant motion.

no reason to spend the parties' or the Court's time and resources on expert discovery relating to infringement or validity of the '963. In these circumstances, a stay is warranted.

**LEGAL STANDARD**

District courts have broad discretion in matters concerning case management and discovery. *See United States v. Schiff*, 602 F.3d 152, 176 (3d Cir. 2010). "Central to the rationale providing for such discretion is that of the 'court's inherent power to conserve judicial resources by controlling its own docket.'" *Quest Licensing Corp. v. Bloomberg L.P.*, No. 14-561-GMS, 2014 WL 12929870, at *1 n.2 (D. Del. Dec. 3, 2014) (citation omitted). Courts in this District generally consider three factors in deciding how to exercise their discretion in the context of a motion to stay: (1) whether a stay will simplify the issues for trial; (2) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage; and (3) the status of the litigation, particularly whether discovery is complete and a trial date has been set. *See Am. Axle & Manuf., Inc. v. Neapco Holdings LLC*, No. 15-1168-LPS, 2021 WL 616992, at *2 (D. Del. Feb. 17, 2021). Here, all three factors weigh in favor of staying expert discovery with respect to the '963 patent.

**ARGUMENT**

**A Stay Would Simplify Issues Before The Court**

"[T]he simplification factor includes the reality that judicial economy favors avoiding the complexity and expenditure of resources that would result from [the stay being denied]." *Id.* Here, staying expert discovery for the '963 patent would unquestionably avoid the expenditure of unnecessary resources and reduce the number of issues that may be brought before the Court. There are seven patents-in-suit from three different patent families. The '963 patent is the only patent asserted from its family, and it concerns a subject matter (drug distribution systems for treatment of narcoleptic patients) distinct from the subject matter of the other patents-in-suit (GHB formulations and their use). No expert expected to opine on the '963 patent is expected to opine on the formulation patents. Therefore, staying discovery with respect to the '963 patent will unquestionably reduce the cost of discovery and simplify issues. It will also avoid the parties raising expert discovery disputes for the '963 patent with the Court. This factor thus weighs in favor of the stay.

**The Stay Will Not Cause Prejudice to Avadel or Give Jazz any Advantage**

The requested stay will not prejudice Avadel or give advantage to Jazz because there is no reason for either party to engage in expert discovery regarding infringement or validity of the '963 patent as long as the Federal Circuit's stay of this Court's delisting order remains in place (D.I. 265), or if the Federal Circuit's stay is dissolved.

*First*, if the Federal Circuit resolves the appeal in Avadel's favor (or *sua sponte* dissolves its own stay), there would be no need for any expert discovery. Indeed, within weeks of the Court's delisting Order (D.I. 232), Avadel wrote to Jazz and urged that "the parties should

Honorable Gregory B. Williams
December 27, 2022
Page 3

cooperate to avoid any unnecessary work and expense" (i.e., expert discovery) with respect to the '963 patent. Ex. A. Now, faced with an appeal, Avadel has changed course and wishes to proceed with expert discovery that it previously agreed was unnecessary. But if the Federal Circuit resolves the appeal in Avadel's favor, it will prove Avadel's initial position accurate. Because in that scenario, Jazz could not then enforce the already-expired '963 patent. There would be no need for the Court to hear expert testimony on infringement and validity.

*Second*, if Jazz prevails at the Federal Circuit, the analysis with respect to expert discovery regarding infringement and validity of the '963 patent remains the same. In that scenario, the FDA would not grant Avadel final approval until after the both the patent and the regulatory exclusivity period expire—which would be *before* the close of expert discovery and *before* trial. Thus there is no practical need for the parties to undertake five months of expert discovery (and for the Court to resolve any disputes that arise) between January and June, nor will it make sense for the Court to consider infringement or validity in that timeframe. As Avadel itself urged, the parties should avoid "any unnecessary work and expense." Ex. A.

*Third*, even if the Federal Circuit is still deciding Jazz's appeal when the regulatory exclusivity period ends, then the exclusivity will naturally expire and Avadel could again seek final FDA approval. And there would still be no need for the Court to consider expert testimony concerning the infringement or validity of the expired '963 patent. Once again, this leads to the conclusion that a stay of expert discovery on these topics makes sense.

Thus, while Jazz has a right to assert the '963 patent in this case while the appeal is pending, and in fact must do so to preserve the appeal, *see PPG Indus.*, 679 F. App'x at 1005, there is no practical reason to undertake costly and time-consuming expert discovery that could lead to discovery disputes before this Court. The appeal will resolve significant legal issues related to the '963 patent, including the regulatory exclusivity relating to that patent, but regardless of the outcome of the appeal, it will not make expert opinion on infringement or validity necessary in this proceeding.

**The Status of the Case Supports the Stay**

The status of the case supports granting the requested stay. Expert discovery on the formulation patents begins in less than one month and closes in late-June 2023. Trial is in October. Granting the requested stay will allow the parties (and the Court) to focus time, attention, and resources on six unexpired patents still in suit.

**CONCLUSION**

For the foregoing reasons, Jazz respectfully requests that the Court stay all expert discovery deadlines pertaining to the '963 patent while this Court's Order and Judgment (D.I. 232) requiring Jazz to request delisting of the '963 patent from the Orange Book is stayed by Order of the Federal Circuit Court of Appeal (D.I. 265).

Honorable Gregory B. Williams
December 27, 2022
Page 4

                                        Respectfully,

                                        */s/ Jeremy A. Tigan*

                                        Jeremy A. Tigan (#5239)

JAT/rah
Enclosures

cc:     Clerk of the Court (via hand delivery)
        All Counsel of Record (via CM/ECF and e-mail)