IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 21-691 (GBW) |
| AVADEL CNS PHARMACEUTICALS LLC, | ) ) | **PUBLIC VERSION** |
| Defendant. | ) ) ) | **Confidential Version Filed: March 3, 2023** |
| JAZZ PHARMACEUTICALS, INC. and JAZZ PHARMACEUTICALS IRELAND LIMITED, | ) ) ) ) | **Public Version Filed: March 10, 2023** |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 21-1138 (GBW) |
| AVADEL CNS PHARMACEUTICALS LLC, | ) ) | **PUBLIC VERSION** |
| Defendant. | ) ) | |
| JAZZ PHARMACEUTICALS, INC. and JAZZ PHARMACEUTICALS IRELAND LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 21-1594 (GBW) |
| AVADEL CNS PHARMACEUTICALS LLC, | ) ) | **PUBLIC VERSION** |
| Defendant. | ) ) | |

**LETTER TO THE HONORABLE GREGORY B. WILLIAMS
FROM JEREMY A. TIGAN REGARDING JAZZ'S OPPOSITION TO AVADEL'S
<u>MOTION TO AMEND ITS INFRINGEMENT CONTENTIONS</u>**

Dear Judge Williams,

Avadel's motion to amend its contentions is premised on a brand new, extremely belated claim construction: namely that "gamma-hydroxybutyrate" and "oxybate" in Jazz's patent claims *exclude* sodium oxybate, the preferred embodiment in Jazz's patents and the active ingredient in Avadel's NDA Product. Avadel's new claim construction is legally, scientifically, and grammatically incorrect. This would have been briefed during *Markman*, but Avadel never raised it. And there is no reason, let alone good cause, to redo the many implicated case events—written discovery, depositions, *Markman*, and expert discovery at least—because there is no reason that Avadel could not have advanced this theory under the Court's schedule.[1]

Avadel has been on notice of Jazz's infringement theory relying on the sodium oxybate in Avadel's NDA Product since Jazz served its initial contentions in 2021. As explained below, the opinions in Jazz's opening expert reports are fully disclosed in both Jazz's 2021 Initial and 2022 Final Infringement Contentions, and Avadel explicitly responded—in May 2022—to Jazz's reliance on the sodium oxybate contained in Avadel's NDA Product. As such, the entire premise of Avadel's motion lacks merit, and the motion should be denied.

For the Sustained Release Patents, Jazz contended: ███████████████
█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
███████ Similarly, for the '079 and '782 patents, Jazz's contentions identified Avadel's NDA Product and its four different strengths of sodium oxybate as meeting the "amount of oxybate" limitation in the claims. *See, e.g.*, Ex. 3 at 3-4; Ex. 2 at 208.

Avadel claims ignorance now, but it undoubtedly understood Jazz's contentions. Indeed, citing the same pages of Jazz's 2021 contentions that Jazz relies on here (namely Ex. 1 at 30-32), Avadel responded in its May 2022 Final Invalidity Contentions as follows: "Jazz contends that FT218 satisfies limitations to 'the sustained release portion releases . . . its gamma-hydroxybutyrate' based on what appears to be extrapolation from the total amount of ***sodium oxybate*** released over a given time period, without regard to where it came from [i.e., the sustained release portion or the immediate release portion]." Ex. 4 at 61-62 (citing Ex. 1 at 30-32). Avadel's contentions thus make clear that Avadel was well aware that Jazz was relying on the percent of ***sodium oxybate*** released to demonstrate infringement since at least May 2022.

---

[1] "In determining whether a party has demonstrated good cause to amend its contentions, the key factor that courts have considered is whether that party has shown diligence both in discovering that an amendment was necessary and in moving to amend after that discovery." *Brit. Telecom. PLC v. IAC/InterActiveCorp*, 2020 WL 3047989, at *2 (D. Del. June 8, 2020); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F. 3d 1355, 1366 (Fed. Cir. 2006) (noting that the diligence standard in Fed. R. Civ. P. 16 is the same as in local patent rules). Avadel argues that it only became aware of its new theory during a February 2022 meeting with its expert Dr. Klibanov, who apparently ***"carefully"*** read the patents for the first time in 21 months of working with Avadel. Notably, Avadel does not explain why Dr. Klibanov or any of Avadel's other 9 experts or many lawyers never recognized this new claim construction position before.

1

Moreover, even though Avadel now wants to contend that its sodium oxybate NDA Product does not comprise oxybate, Avadel repeatedly contended in its April 2022 Final Noninfringement Contentions that it failed to meet the "sustained release portion" of Jazz's claims—under Avadel's now-rejected claim construction for that term—because of the percent *oxybate* that Avadel's NDA Product releases.  Avadel cannot now credibly argue that its sodium oxybate NDA Product does not comprise and release oxybate after expressly arguing that it did in April 2022.

In addition to relying on ▉▉▉▉▉▉▉, Jazz also contended that "testing of Avadel's NDA Product, as well as potential testimony from Avadel and potential third parties," would show that Avadel's NDA Product meets the claimed dissolution profile. Ex. 1 at 32. Jazz never limited its contentions to its own testing, nor did Jazz have access to the testing underlying ▉▉▉▉ or ▉▉▉▉ at the time of Jazz's May 2022 Final Infringement Contentions. Those two missing pieces came *after* Jazz's Final Infringement Contentions, when Avadel finally produced the underlying testing on July 12, 2022 (though Jazz requested it in August 2021, ▉▉▉▉▉▉▉▉▉), and when Jazz deposed Avadel's testing scientist on October 8, 2022 (Ex. 7 at 120-122, 132-138). In fact, Avadel then admitted in RFA Responses on October 28, 2022 that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Consistent with Jazz's contentions, Jazz's expert relies upon all of this in his report. *See, e.g.*, Ex. 9 at 25-29. Put simply, there is nothing new in Jazz's expert reports compared to Jazz's contentions. Thus, Avadel cannot show any good cause for raising its new theory now, at this late stage of the case.

Moreover, Avadel cannot show that *Pennypack* warrants permitting its new theory at this time. The *Pennypack* factors exist to protect against the type of prejudice and delay that Avadel's new theory would inject at this late stage of the case. Jazz's responses to Avadel's ten opening invalidity expert reports are due on March 17—just over two weeks from now—and Jazz should not be forced to simultaneously (1) restart claim construction,[2] (2) serve new discovery requests, (3) prepare for and depose several witnesses (at least Herve Guillard, Jason Vaughn, and Jennifer Gudeman, and potentially Thorsteinn Thorsteinsson and David Monteith),[3] and (4) serve supplemental infringement reports.

---

[2] Avadel argues that "disputes about claim scope routinely arise after claim construction is complete," but *Illumina* is readily distinguishable because, there, the Court found that the new argument was "***not*** a request for claim construction." *Illumina*, 2021 WL 3847859, at *8.

[3] Dr. Guillard formulated Avadel's product and oversaw dissolution testing; Dr. Vaughn is Avadel's 30(b)(6) witness on formulation/testing; Dr. Gudeman made public statements contradicting Avadel's new theory; Dr. Thorsteinsson and Dr. Monteith aided in

Furthermore, Avadel's new theory and claim construction are contradicted by Avadel's invalidity theories. For example, two of Avadel's experts rely on example formulations from alleged prior art that are comprised of "sodium gamma-hydroxybutyrate" to argue that Jazz's claimed dissolution profile, which Avadel now says cannot include sodium gamma-hydroxybutyrate, is anticipated. Ex. 10 at 6-7, Ex. 11 at 19-20, 26. Therefore, at least two of Avadel's experts, who also presumably "carefully" read Jazz's patents, do not agree with Dr. Klibanov that those claims exclude sodium oxybate. Either way, Jazz's validity rebuttal reports would also be affected by Avadel's new claim construction, and Jazz would need additional time to complete those should the Court permit this new theory and also agree with Avadel on claim construction.

Jazz respectfully submits that it is far too late for all of this. Jazz asked Avadel if it had a proposal to modify the schedule, including the trial date, but Avadel never responded. *See* Ex. 12. There is no reasonable way to introduce Avadel's inexcusably late theory and keep the October trial date, and certainly not without denying Jazz due process. "Courts applying the *Pennypack* factors in the case of sophisticated, complex litigation involving parties represented by competent counsel have been less indulgent in their application and more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *Bridgestone Sports Co. v. Acushnet Co.*, No. 05-132, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007). But here the factors are satisfied in any event. The prejudice to Jazz (factor 1) would be substantial, and the opportunity to cure (factor 2), especially without disrupting the trial date (factor 3), would be nonexistent.[4] Nor does the alleged importance of this new theory (factor 5) weigh in favor of a complete abandonment of the disclosures previously required by the Scheduling Order or an abandonment of application of the dates in the Scheduling Order going forward. At this stage of the case, the parties should be narrowing their theories, not expanding them. A 5-day trial is set for October. Avadel has already introduced dozens of invalidity theories through its ten invalidity experts. And based on the noninfringement contentions it already has without this proposed amendment, Avadel will likely introduce many noninfringement theories through multiple experts when rebuttal reports are due on March 17.[5] Accordingly, the *Pennypack* factors also support denial of Avadel's motion.

---

formulation/testing. All of these witnesses would provide relevant testimony regarding whether Avadel's NDA product contains the negatively charged or anionic form of gamma-hydroxybutyric acid (which is what Avadel says "oxybate" means).

[4] It would force Jazz to "choose from two bad options: either scramble to have an expert respond . . . or offer no response and risk not preserving an opinion for trial." *Galderma Labs, L.P. v. Amneal Pharms., LLC*, No. 16-207, 2018 WL 508876, at *2 (D. Del. Jan. 22, 2018). Jazz should not have to make that choice. *Id.*; *see also Bridgestone*, 2007 WL 521894 at *5 (striking new theory where affording the non-moving party "a fair opportunity to respond would necessarily require extensions of the deadlines set by the Court").

[5] *See Finjan, Inc v. Rapid7, Inc*, No. 18-1519, 2020 WL 5798545, at *4 (D. Del. Sept. 29, 2020) (precluding new theory where it "will not leave Finjan without an infringement case").

3

                        Respectfully,

                        */s/ Jeremy A. Tigan*

                        Jeremy A. Tigan (#5239)

JAT:lo
Attachments
cc:     Clerk of the Court (via hand delivery)
        All Counsel of Record (via CM/ECF and email)