# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AVADEL CNS PHARMACEUTICALS, LLC,<br><br>Defendant. | C.A. No. 21-691-GBW<br><br>**PUBLIC VERSION** |
| JAZZ PHARMACEUTICALS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AVADEL CNS PHARMACEUTICALS, LLC,<br><br>Defendant. | C.A. No. 21-1138-GBW |
| JAZZ PHARMACEUTICALS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AVADEL CNS PHARMACEUTICALS, LLC,<br><br>Defendant. | C.A. No. 21-1594-GBW |

**CONCISE STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 2
OF NONOBVIOUSNESS OF U.S. PATENT NOS. 11,077,079 AND 11,147,782**

**TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | THE '079/'782 PATENTS | 1 |
| II. | THE "PREMISE" OF DR. KLIBANOV'S OBVIOUSNESS OPINIONS IS BASED ON DISCLOSURES THAT WOULD NOT HAVE BEEN AVAILABLE TO A POSA | 2 |
| III. | AVADEL'S ARGUMENTS TO THE PTO BEFORE THIS CASE BEGAN DIRECTLY CONTRADICT ITS OBVIOUSNESS ARGUMENTS IN THIS CASE | 4 |

I.  **THE '079/'782 PATENTS**

1. U.S. Patent Nos. 11,077,079 ("'079 Patent") and 11,147,782 ("'782 Patent," together with the '079 Patent, "'079/'782 Patents") are titled, "GHB Formulation And Method For Its Manufacture," and issued on August 3, 2021 and October 19, 2021, respectively. C.A. No. 21-1138, D.I. 216, ¶ 10.; A0614; C.A. No. 21-1594, D.I. 211 at ¶ 10; A0633. The effective filing date of each patent, February 18, 2016, is after March 2013. A0614; A0633; A0666, ¶ 30; A0702, ¶ 153.

2. Jazz Pharmaceuticals, Inc. and Jazz Pharmaceuticals Ireland Ltd. ("Plaintiffs" or "Jazz") have asserted that Avadel CNS Pharmaceuticals, LLC ("Defendant" or "Avadel") infringes claims 1-3, 5, 7-12, 14, and 16-18 of the '079 Patent and claims 1-10, 13-18, and 20-24 of the '782 Patent. C.A. No. 21-1138, D.I. 216, ¶¶ 25-37; A0212, ¶ 19; C.A. No. 21-1594, D.I. 211 at ¶¶ 10, 24-36; A0143-A0144, ¶ 17.

3. Each asserted claim of the '079 Patent requires, among other elements, "opening a sachet containing a solid oxybate formulation," "mixing the formulation with water," and "orally administering the mixture to the patient." A0630-A0631. As one example, the above-recited claim elements are highlighted below in claim 1 of the '079 Patent:

> 1. A method of treating narcolepsy in a patient in need thereof, the method comprising:
> administering a single daily dose to the patient, the single daily dose comprising an amount of oxybate equivalent to from 4.0 g to 12.0 g of sodium oxybate, wherein the administering comprises:
> opening a sachet containing a solid oxybate formulation, mixing the formulation with water, and orally administering the mixture to the patient, wherein the oxybate formulation comprises an immediate release component and a controlled release component.

A0630.

4. Each asserted claim of the '782 Patent requires, among other elements, "a viscosity enhancing agent" "and an acid," "wherein the viscosity enhancing agent and the acid are separate

from the immediate release particles and the modified release particles." A0651. As one example, the above-recited claim elements are highlighted below in claim 1 of the '782 Patent:

> We claim:
> 1. A formulation of gamma-hydroxybutyrate comprising:
> a plurality of immediate release particles comprising gamma-hydroxybutyrate;
> a plurality of modified release particles comprising gamma-hydroxybutyrate;
> a viscosity enhancing agent; and
> an acid;
> wherein the viscosity enhancing agent and the acid are separate from the immediate release particles and the modified release particles

A0651.

## II. THE "PREMISE" OF DR. KLIBANOV'S OBVIOUSNESS OPINIONS IS BASED ON DISCLOSURES THAT WOULD NOT HAVE BEEN AVAILABLE TO A POSA

5. Avadel's alleged obviousness expert, Dr. Alexander Klibanov, testified at deposition that his only basis for alleged invalidity for the '079/'782 Patents is "obviousness based on certain assumptions that are clearly and repeatedly stated in Klibanov 11," which is Dr. Klibanov's Second Supplemental Opening Expert Report. A0495, 6:22-7:20; A0496-A0497, 12:21-13:8.

6. Dr. Klibanov states in his Second Supplemental Opening Expert Report that his "opinions herein are premised" on two assumptions, the first of which is that the '079/'782 Patents' claims have adequate written description support and are enabled. A0670-A0671, ¶ 43; A0705-A0706, ¶ 166. Dr. Klibanov confirmed at deposition that he used this assumption for purposes of his obviousness opinions for the '079/'782 Patents, and that he "analyze[d] the claims of the resinate patents[1] under these and some other assumptions that are expressly and repeatedly stated in [his] expert reports." A0498, 17:22-18:19.

---

[1] Dr. Klibanov refers to the '079/'782 Patents as the "resinate patents." A0499, 22:10-14.

7. Dr. Klibanov testified that he understands that the written description and enablement analyses for the '079/'782 Patents "are based on the entirety of the ['079/'782 Patents], both the specification and the – and the claims." A0498, 18:21-19:12.

8. For purposes of offering his opinions in this case, Dr. Klibanov used an assumption that a POSA would have had access to the '079/'782 Patents and knowledge of the specification and claims of the '079/'782 Patents when conducting their obviousness analysis. A0498, 19:15-20:11.

9. When asked why he focused on only certain disclosures in the alleged prior art that allegedly related to the '079/'782 Patents' asserted claims' dosage forms (as opposed to disclosures in the alleged prior art regarding other dosage forms), Dr. Klibanov testified: "I wasn't engaged in some open-ended exercise. I was specifically tasked by counsel for Avadel to [opining] whether the asserted claims of the resinate patents are obvious under certain assumptions that I repeatedly state in my expert reports. So I have relied on the documents that I felt I needed to make an informed judgment and to form an informed opinion on that issue." A0505, 46:2-18 (with errata change bracketed); *see also* A0529, 143:20-144:23.

10. Dr. Klibanov confirmed that he had knowledge of claims and specification of the '079/'782 Patents before he started to search and review the prior art, testifying: "Yes, I certainly reviewed the – the resinate patents, both the claims and the specification, before I addressed the – before I started reviewing the prior art." A0505, 46:19-25; *see also* A0529-A0530, 144:25-145:17 (Dr. Klibanov testifying, "[M]y analysis started with reviewing the resinate patents, including their specifications and the claims, and, you know, also at some point I reviewed their prosecution history. . . . And I used the references that are – in my judgment were particularly relevant to conducting the analysis that I've been asked to conduct.").

11.     Dr. Klibanov testified at deposition that the assumption regarding written description and enablement that he used for his obviousness opinions "depends on the existence of those patents." A0538, 178:4-13. Dr. Klibanov admitted that a POSA in February 2016 would not have had access to the '079/'782 Patents. A0538, 178:14-21. Ultimately, Dr. Klibanov testified that "I don't know what assumption a POSA would or would not have had." A0538, 177:8-17.

### III.    AVADEL'S ARGUMENTS TO THE PTO BEFORE THIS CASE BEGAN DIRECTLY CONTRADICT ITS OBVIOUSNESS ARGUMENTS IN THIS CASE

12.     In 2020, Avadel was prosecuting its U.S. Patent Application No. 16/420,321 ("'321 Application"), which later issued as Avadel's U.S. Patent No. 10,952,986 ("Avadel's '986 Patent"). A0758. The earliest effective filing date for Avadel's '986 Patent is July 22, 2016. A0758.

13.     Like the '079 Patent's asserted claims, Avadel's '321 Application's claim 1 recited, among other elements, "opening a sachet containing a gamma-hydroxybutyrate formulation," "mixing the formulation with water," and "orally administering the mixture." A0887; *see also* A0871-A0872, ¶ 53. The United States Patent and Trademark Office ("PTO") rejected claim 1 of the '321 Application as unpatentable over Liang (which Dr. Klibanov relies upon) and another reference, Cook. A0905; *see also* A0872-A0873, ¶ 54.

14.     In response to that rejection, Avadel stated to the PTO that "Liang do[es] not expressly disclose opening a sachet containing a gamma hydroxybutyrate formulation, mixing the formulations with water and orally administering the mixture." A0893; *see also* A0872-A0873, ¶ 54. Avadel further argued to the PTO that the prior art would not have motivated a POSA to administer controlled release gamma-hydroxybutyrate formulations from a sachet, but instead disclosed "inherent problems" with sachet formulations and thus would have taught a POSA to abandon a "problematic" sachet formulation "in favor of a purely liquid formulation." A0893;

*see also* A0872-A0873, ¶ 54. Avadel also stated that a POSA would not have been able to form a "reasonable expectation of success in combining Cook with Liang" because of concerns surrounding the stability of gamma-hydroxybutyrate and its potential degradation. A0893-0894; *see also* A0872-A0873, ¶ 54.

15. The PTO withdrew its rejection based on Liang and Cook, stating that Avadel's arguments had been "fully considered and are persuasive." A0967.

16. In 2020, Avadel was prosecuting its U.S. Patent Application No. 16/281,235 ("'235 Application"), which later issued as Avadel's U.S. Patent No. 10,736,866 ("Avadel's '866 Patent"). A0976. The earliest effective filing date for Avadel's '866 Patent is July 22, 2016. A0976.

17. Like the '782 Patent's asserted claims, Avadel's '235 Application's claim 1 recited, among other elements, "a suspending or viscosifying agent . . ." and "an acidifying agent . . .," "wherein the suspending or viscosifying agent and the acidifying agent are separate and distinct from the immediate release portion and the modified release portion." A0935; *see also* A0881-A0883, ¶ 150. The PTO rejected claim 1 of the '235 Application as unpatentable over Liang (which Dr. Klibanov relies upon). A0924; *see also* A0881-A0883, ¶ 150.

18. In response to that rejection, Avadel argued to the PTO that Liang would not have rendered obvious the claimed formulation because "Liang's only teaching regarding excipients is that they have to be actually part of Liang's immediate release and delayed/controlled release components." A0951; *see also* A0881-A0883, ¶ 150. Avadel argued to the PTO that "nowhere does Liang disclose or suggest a formulation having a suspending/viscosifying agent and an acidifying agent that are separate and distinct from the immediate release component and the delayed/controlled release component of the formulation." *Id.* Avadel further argued to the PTO

that "a person of ordinary skill in the art would not be prompted by the disclosure of Liang to modify the dosage forms discussed therein and arrive at the claimed formulation with a reasonable expectation of success."  A0952; *see also* A0881-A0883, ¶ 150.

19. The PTO withdrew its rejection, stating that Avadel's arguments had been "fully considered and are persuasive."  A0959; *see also* A0881-A0883, ¶ 150.

20. When asked about Avadel's statements to the PTO, Dr. Klibanov testified:  "I remember that there were various statements that Avadel made in the context of those particular proceedings, which context was different from the context that I'm operating within here." A0537, 174:23-175:13; *see also* A0537, 176:10-21 (Dr. Klibanov testifying that "I don't necessarily disagree with [what Avadel told the PTO]" because "it was in a different context" and that he "conducted [his] own analysis in this particular case").

21. When asked "[w]hat's the different context," Dr. Klibanov testified: "The different context is that, first of all, in – in my case, in my analysis, I've been specifically instructed to assume that there is enablement and adequate written description."  A0537, 175:14-18.

22. Dr. Klibanov was asked: "[T]he assumption that Jazz's patents have adequate written description and enablement, the POSA in February 2016 would have had that assumption?" Dr. Klibanov responded: "I don't know what assumption a POSA would or would not have had." A0538, 177:8-17.

- 7 -

Dated: November 30, 2023

Respectfully submitted,

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

/s/ *Jeremy A. Tigan*

F. Dominic Cerrito
Eric C. Stops
Evangeline Shih
Andrew S. Chalson
Gabriel P. Brier
Frank C. Calvosa
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiffs*
*Jazz Pharmaceuticals, Inc. and*
*Jazz Pharmaceuticals Ireland Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 30, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Daniel M. Silver, Esquire<br>Alexandra M. Joyce, Esquire<br>MCCARTER & ENGLISH, LLP<br>Renaissance Centre<br>405 N. King Street, 8th Floor<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Kenneth G. Schuler, Esquire<br>Marc N. Zubick, Esquire<br>Alex Grabowski, Esquire<br>Sarah W. Wang, Esquire<br>LATHAM & WATKINS LLP<br>330 North Wabash Avenue, Suite 2800<br>Chicago, IL  60611<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Herman H. Yue, Esquire<br>Franco Benyamin, Esquire<br>LATHAM & WATKINS LLP<br>1271 Avenue of the Americas<br>New York, NY  10020<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Audra Sawyer, Esquire<br>Alan J. Devlin, Esquire<br>Ian Conner, Esquire<br>Denise Laspina, Esquire<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C.  20004-1304<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

Daralyn J. Durie, Esquire     *VIA ELECTRONIC MAIL*
Eric P. Berger, Esquire
Rebecca E. Weires, Esquire
Adam R. Brausa, Esquire
Tannyr Pasvantis, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Kira A. Davis, Esquire     *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
Katherine E. McNutt, Esquire
Rose S. Lee, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
*Attorneys for Defendant*

David F. McGowan, Esquire     *VIA ELECTRONIC MAIL*
David F. Kowalski, Esquire
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA  92130
*Attorneys for Defendant*

Andrew T. Jones, Esquire     *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C.  20037
*Attorneys for Defendant*

                 */s/ Jeremy A. Tigan*

                 Jeremy A. Tigan (#5239)