IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

———————————————————

| | | |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-691 (GBW) |
| | ) | |
| AVADEL CNS PHARMACEUTICALS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

———————————————————

| | | |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC. and | ) | |
| JAZZ PHARMACEUTICALS IRELAND | ) | |
| LIMITED, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1138 (GBW) |
| | ) | |
| AVADEL CNS PHARMACEUTICALS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

———————————————————

| | | |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC. and | ) | |
| JAZZ PHARMACEUTICALS IRELAND | ) | |
| LIMITED, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1594 (GBW) |
| | ) | |
| AVADEL CNS PHARMACEUTICALS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

———————————————————

**[PROPOSED] FINAL JURY INSTRUCTIONS**

## TABLE OF CONTENTS

1.   GENERAL INSTRUCTIONS ................................................................................................ 1

1.1   Introduction ........................................................................................................................ 1

1.2   Jurors' Duties ...................................................................................................................... 2

1.3   Evidence Defined ............................................................................................................... 3

1.4   Direct and Circumstantial Evidence ................................................................................. 5

1.5   Consideration of Evidence ................................................................................................ 6

1.6   Agency ................................................................................................................................ 7

1.7   Statements of Counsel ....................................................................................................... 8

1.8   Facts Admitted ................................................................................................................... 9

1.9   Credibility of Witnesses .................................................................................................. 10

1.10   Expert Witnesses ............................................................................................................. 11

1.11   Deposition Testimony ..................................................................................................... 12

1.12   Number of Witnesses ...................................................................................................... 13

1.13   Exhibits ............................................................................................................................ 14

1.14   Use of Notes .................................................................................................................... 15

1.15   Burdens of Proof ............................................................................................................. 16

2.   THE PARTIES AND THEIR CONTENTIONS ........................................................... 18

2.1   The Parties ....................................................................................................................... 18

2.2   The Parties' Contentions ................................................................................................. 19

3.   PATENT INFRINGEMENT CLAIMS ......................................................................... 21

3.1   The Patent Laws ............................................................................................................... 21

3.2   Patent "Claims" Generally ............................................................................................. 22

3.3   Construction of the Claims ............................................................................................. 24

3.4   Independent and Dependent Claims ............................................................................... 26

3.5    "Comprising Claims" ................................................................................................ 27

4.    PATENT INFRINGEMENT ........................................................................................ 28

4.1    Infringement Generally ............................................................................................. 28

4.2    Direct Infringement ................................................................................................... 29

5.    INVALIDITY ............................................................................................................... 31

5.1    Invalidity Generally .................................................................................................. 31

5.2    Perspective of One of Ordinary Skill in the Art ...................................................... 34

5.3    Prior Art .................................................................................................................... 35

5.4    Written Description ................................................................................................... 36

5.5    Enablement ................................................................................................................ 43

5.6    Obviousness .............................................................................................................. 50

5.7    Inventorship .............................................................................................................. 55

5.8    Derivation .................................................................................................................. 58

6.    PATENT DAMAGES .................................................................................................. 60

6.1    Damages Introduction ............................................................................................... 60

6.2    Date Damages Begin ................................................................................................. 62

6.3    Reasonable Royalty – Generally ............................................................................... 63

6.4    Factors for Determining Reasonable Royalty ........................................................... 65

6.5    Reasonably Royalty – Non-Infringing Alternatives OR Substitutes ........................ 68

6.6    Reasonably Royalty – Timing ................................................................................... 69

6.7    Patent Damages Interest ............................................................................................ 70

7.    DELIBERATION AND VERDICT ............................................................................. 71

7.1    Introduction ............................................................................................................... 71

7.2    Unanimous Verdict ................................................................................................... 72

7.3    Duty to Deliberate ..................................................................................................... 73

7.4     Social Media ............................................................................................................ 74

7.5     Court Has No Opinion ............................................................................................ 75

1.      **GENERAL INSTRUCTIONS**

1.1      **INTRODUCTION[1]**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.  Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that you must use in evaluating the testimony and evidence.  Then I will explain the positions of the parties and the law you will apply in this case.  And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.

---

[1]   Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)), and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

## 1.2     JURORS' DUTIES[2]

You have two main duties as jurors.  The first is to decide what the facts are from the evidence that you saw and heard in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.  You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

---

[2]    Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)), and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

## 1.3     EVIDENCE DEFINED[3]

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.  The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition transcript testimony that has been played by video or read to you, the exhibits that I allowed into evidence, matters I have instructed you to take judicial notice of, and the stipulations to which the lawyers agreed.

Certain charts, summaries, and graphics have been used to illustrate certain evidence and testimony from witnesses.  Unless I have specifically admitted them into evidence, these charts, summaries, and graphics are not themselves evidence, even if they refer to, identify, or summarize evidence, and you will not have these demonstratives in the jury room.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence.  My legal rulings are not evidence.  You should not be influenced by a lawyer's objection or by my ruling on that objection.  Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And, sometimes I may have ordered you to disregard things that you saw or

---

[3]   Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)), and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

heard, or that I struck from the record.  Those things are not evidence.  You must make your

decision only based on the evidence, as I have defined it, and nothing else.

## 1.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE[4]

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence."  I will now remind you what each means.

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

---

[4]    Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)), and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

### 1.5    CONSIDERATION OF EVIDENCE[5]

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

---

[5]   Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)), and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

### 1.6    AGENCY[6]

Jazz and Avadel are corporations and can only act through their officers and employees.  Any action or omission of an officer or employee within the scope of his or her employment is the action or omission of the corporation that employs him or her.

---

[6]   Source: Allscripts Healthcare LLC, Health Grid Holding Co. LLC, Health Grid Coordinated Solutions Inc., Mahathi Software, LLC v. Andor Health, LLC, Mahathi Software PVT., LTD, Raj Toleti, Paul Tyriver, Amar Bulsara, 1:21-cv-00704-MAK, D.I. 550 (Plaintiffs' Proposed Jury Instructions).

## 1.7    STATEMENTS OF COUNSEL[7]

A further word about statements of counsel and arguments of counsel.  The attorneys' statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.  If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

---

[7]   Sources: *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 316 (Preliminary Jury Instructions (Phase I)) and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

### 1.8    FACTS ADMITTED[8]

Certain facts that the parties have admitted during the course of this case have been read to you during this trial.  You must treat these facts as having been proved for purposes of this case.

---

[8]   Sources: *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 316 (Preliminary Jury Instructions (Phase I)) and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

## 1.9     CREDIBILITY OF WITNESSES[9]

You are the sole judges of each witness's credibility.  You may believe everything a witness says, or part of it, or none of it.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he gave at the trial by deposition testimony played by video.  You have the right to distrust such a witness's testimony and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory that they remembered better on reconsideration or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

---

[9]   Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)), and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

## 1.10    EXPERT WITNESSES[10]

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  You are free to accept or reject the testimony of experts, just as with any other witness.

---

[10]    Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)), and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

### 1.11   DEPOSITION TESTIMONY[11]

During the trial, certain testimony was presented to you by the playing of video excerpts from a deposition.  The deposition testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with evidence.  You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

---

[11]   Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)), and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

## 1.12   NUMBER OF WITNESSES[12]

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

---

[12]   Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)), and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

### 1.13    EXHIBITS[13]

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  You will have these admitted exhibits in the jury room to consider as evidence for your deliberations.

The remainder of the exhibits (including charts, graphics, Power Point presentations, and animations) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," will not be in the jury room and have not been admitted, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

---

[13]    Sources: *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 316 (Preliminary Jury Instructions (Phase I)) and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

## 1.14    USE OF NOTES[14]

You may have taken notes during trial to assist your memory.  As I instructed you at the beginning of the case, you should use caution in consulting your notes.  There is generally a tendency to attach undue importance to matters which one has written down.  Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented.  Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

---

[14]    Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)), and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

### 1.15    BURDENS OF PROOF[15]

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a case involving patents, two different burdens of proof are used. The first is a lower burden called "preponderance of the evidence." The second is a higher burden called "clear and convincing evidence." I told you about these standards of proof during my preliminary instructions to you and I will now remind you what they mean.

Jazz has accused Avadel of infringing certain claims of two patents. Avadel denies infringement for the '488 patent but does not dispute infringement for the '782 patent. Avadel also contends that the asserted claims are invalid.

Jazz bears the burden of proving infringement and the amount of monetary damages by a preponderance of the evidence. Preponderance of the evidence is evidence that is more likely true than not. To put it another way, if you were to put Jazz's and Avadel's evidence on opposite sides of the same scale, and the evidence supporting Jazz's claims would make the scales somewhat tip to Jazz's side, then you should find for Jazz. If the scale should remain equal or tip somewhat to Avadel's side, then Jazz has not met its burden of proof.

Avadel bears the burden of proving that each of the asserted claims is invalid and must do so by clear and convincing evidence. Clear and convincing evidence means evidence that it is highly probable that a fact is true. Proof by clear and convincing evidence is a higher standard of proof than proof by a preponderance of the evidence. [**Jazz Proposes**: To put it differently and continue the analogy of the scale, clear and convincing evidence is evidence that leads to an

---

[15]    Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)), and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

abiding conviction that the truth of the factual contentions are highly probable and instantly tilts the scales in the favor of invalidity when weighed against the opposing evidence.[16]][17]

You may have heard of the term "proof beyond a reasonable doubt" from criminal cases. That requirement is the highest burden of proof in our judicial system.  It applies only in criminal cases and has nothing to do with a civil case like this one.  You should therefore not consider that burden of proof in this case.

---

[16]  Source: *Procter & Gamble Co. v. Teva Pharma. USA, Inc.,* 566 F.3d 989, 994 (Fed. Cir. 2009) (quoting *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984)).

[17] Avadel's footnote: Avadel does not agree that this language should be included.

## 2.      THE PARTIES AND THEIR CONTENTIONS

### 2.1      THE PARTIES

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

As I have previously told you, the plaintiffs in this case are Jazz Pharmaceuticals Incorporated and Jazz Pharmaceuticals Ireland Limited.  We have referred to the plaintiffs together as Jazz.  The defendant in this case is Avadel CNS Pharmaceuticals.  We have referred to the defendant as Avadel.

Plaintiff Jazz is the owner of the two patents at issue in this case: United States Patent Nos. 10,758,488 and 11,147,782.  You have heard the lawyers and the witnesses in the case refer to these patents by their last three numbers—the '488 patent and the '782 patent.  Sometimes we referred to them collectively as the asserted patents or patents-in-suit.

## 2.2   THE PARTIES' CONTENTIONS

Jazz contends that Avadel has infringed the asserted claims and that it is entitled to damages for Avadel's past infringement of those asserted claims.

Avadel denies that it infringed the '488 patent. Avadel does not deny infringement of the '782 patent. Avadel also contends that each asserted claim is invalid for one or more of the following reasons, which will be explained further below: lack of written description, lack of enablement, derivation, improper inventorship, and/or obviousness. Avadel also denies that Jazz is entitled to recover past damages related to the patents.[18]

I will now summarize the patent issues that you must decide and for which I will provide instructions to guide your deliberations. The specific questions you must answer are listed on the verdict sheet you will be given. Here are the issues you must decide:

- Whether Jazz has proven by a preponderance of the evidence that Avadel has infringed claim 7 of the '488 patent.

- Whether Jazz has proven by a preponderance of the evidence that Avadel has infringed claim 11 of the '488 patent.

- Whether Avadel has proven by clear and convincing evidence that claim 7 of the '488 patent is invalid.

- Whether Avadel has proven by clear and convincing evidence that claim 11 of the '488 patent is invalid.

- Whether Avadel has proven by clear and convincing evidence that claim 24 of the '782 patent is invalid.

- If you decide that Avadel has infringed any asserted claim of a patent-in-suit that is not invalid, you will also need to decide any money damages to be awarded to Jazz to compensate Jazz for that past infringement. That decision will include both whether Jazz has proven by a preponderance of

---

[18]  Jazz only agrees to include discussion of derivation and inventorship in this section if its Motion in Limine No. 2 is denied.

the evidence that it is entitled to damages as well as the amount of damages for past infringement.

I will provide more detailed instructions on each of the issues you must decide elsewhere in these jury instructions.

3.      **PATENT INFRINGEMENT CLAIMS**

3.1     **THE PATENT LAWS**

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I will now give you more detailed instruction about the patent laws that specifically relate to this case.  If you would like to review my instructions at any time during your deliberations, you will have your copy available to you in the jury room.

### 3.2     PATENT "CLAIMS" GENERALLY[19]

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered paragraphs at the end of each patent.  Everything before the claims in the numbered paragraphs is referred to as the "specification."  The claims are important because it is the words of the claims that define what a patent covers.  Only the claims of a patent can be infringed.

The claims are intended to define, in words, the bounds of an invention.  The text in the rest of the patent provides a description of the invention and provides context for the claims, but it is the claims that define what the patent covers.  Each of the asserted claims must be considered individually.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop.  The tabletop, legs, and glue are each separate limitations of the claim.  When a thing (such as a product) meets each and every requirement of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.

One claim may cover more or less than another claim.  Therefore, what a patent covers depends, in turn, on what each of its claims covers.

---

[19]   Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)), and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

You will first need to understand what each claim covers in order to decide whether there is infringement of the claim and to decide whether the claim is invalid.  You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

### 3.3    CONSTRUCTION OF THE CLAIMS[20]

It is the Court's duty under the law to define what the words in the patent claims mean.  As I instructed you at the beginning of the case, I have made my determinations, and I will now instruct you on the meaning, or "construction," of the claim terms.  You must apply the meaning that I give in each patent claim to decide if the claim is infringed or invalid.  You must accept my definitions of these words in the claims as being correct.  You must ignore any different definitions used by the witnesses or the attorneys.

You are advised that the following definitions for the following terms must be applied:

| Claim Term | Construction |
|---|---|
| "sustained release portion"<br>*'488 patent* | Plain and ordinary meaning, i.e., the portion of the formulation that is not immediate release and that releases over a period of time |
| "by about 4 to about 6 hours"<br>*'488 patent* | Plain and ordinary meaning, which is at any point prior to approximately 4 hours or at any point prior to approximately 6 hours |
| "gamma-hydroxybutyrate"<br>*'488 patent* | Plain and ordinary meaning: i.e., (1) gamma-hydroxybutyric acid or (2) the negatively charged or anionic form (conjugate base) of gamma-hydroxybutyric acid |
| "modified release particles"<br>*'782 patent* | Plain and ordinary meaning, i.e., particles containing an active pharmaceutical ingredient with a release profile that is different from that of an immediate release particle |
| "gamma-hydroxybutyrate" / "oxybate"<br>*'782 patent* | The negatively charged or anionic form (conjugate base) of gamma-hydroxybutyric acid |

---

[20]   Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)), and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

For any words in a claim for which I have not provided you with a definition, you should apply the plain and ordinary meaning to a person of ordinary skill in the art.

### 3.4    INDEPENDENT AND DEPENDENT CLAIMS[21]

Patents have two types of claims: independent claims and dependent claims.

An independent claim does not refer to any other claim of the patent and sets forth all of the requirements that must be met in order to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  For example, in this case, claim 1 of each patent is an independent claim.  As their name implies, an independent claim must be read independently from the other claims to determine the scope of the claim.

A dependent claim does not itself recite all of the requirements of the claim but refers to another claim or claims for some of its requirements.  In this way, the claim "depends" on another claim or claims.  A dependent claim incorporates all of the requirements of the claims to which it refers.  The dependent claim then adds its own additional requirements.  A dependent claim is therefore narrower than an independent claim.  Each of the asserted claims are dependent claims.  Using the table analogy again, an independent claim would be:  Claim 1 – a table comprised of a table top, four legs, and the glue that secures the legs to the tabletop.  A dependent claim would be: Claim 2 – the table of claim 1, wherein the table is the color red.  While a blue table would be covered by claim 1, a blue table would not be covered by claim 2.  Claim 2 is more narrow.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim or claims to which it refers.  So a dependent claim requires all the elements of the claim or claims to which it refers, plus the additional requirement that is specifically set forth in the dependent claim.

---

[21]   Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions) and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

### 3.5    "COMPRISING CLAIMS"[22]

The word "comprising" in a patent claim means "including the following but not excluding others."  A claim that uses the word "comprising" or "comprises" or "including" is not limited to products having only the elements that are recited in the claim, but also covers products that have additional elements.

If you find, for example, that the accused product includes all of the elements of a particular asserted claim, the fact that the accused product also includes additional elements would not avoid infringement of the claim.  [**Jazz Proposes**:  To use the table example again, a claim covering a table comprising "legs," "glue," and "the tabletop" that also has an umbrella still would infringe the claim to a table.]

---

[22]  Source: *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

4.      **PATENT INFRINGEMENT**

4.1      **INFRINGEMENT GENERALLY**[23]

I will now instruct you on the rules you must follow when deciding whether Jazz has proven by a preponderance of the evidence that Avadel has infringed the asserted claims.

[**Jazz Proposes:** Patent law gives the owner of a patent the right to keep others from making, using, selling, or offering to sell a patented product within the United States during the term of the patent.  Any person or business entity that has made, used, sold, or offered to sell a patented product in the United States during the term of the patent without the patent owner's permission, infringes the patent, so long as the patent is not found to be invalid.][24] [25]

Infringement is assessed on a claim-by-claim basis.  You must compare each asserted claim separately against Avadel's Lumryz product to determine whether the accused product contains all elements of that individual patent claim.  You must apply these principles—and those which I will describe further now—to determine whether Jazz has proven infringement of the asserted claims by a preponderance of the evidence.

---

[23]   Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)), and *Cirba Inc. v. VMware, Inc*., C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

[24]   Avadel's footnote: Avadel does not agree that this language should be included.

[25]   Jazz's footnote: This instruction (in substantively identical form) was given by the Court in *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions).

## 4.2    DIRECT INFRINGEMENT[26]

Jazz contends that Avadel infringes the asserted claims.

In order to prove infringement, Jazz must prove by a preponderance of the evidence that Avadel made a product, used a product, offered to sell a product, or sold a product that meets all of the elements of any one claim.  Infringement requires comparing products to the claims, not the specification.

Deciding whether a claim has been infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision and I have already instructed you as to the meaning of some terms of the asserted claims.  The second step is to decide whether the party accused of infringement has made, used, sold, offered for sale or imported within the United States an accused product covered by an asserted claim of the patents-in-suit.

To decide whether Avadel's LUMRYZ$^{TM}$ product infringes an asserted claim, you must compare that product with the patent claim and determine whether every element (or as they are so called, limitation) of the claim is included.  If so, then Avadel's LUMRYZ$^{TM}$ product infringes or did infringe that claim.  If not, then the accused product does not infringe that claim.

You must determine, separately for each asserted claim, whether or not there is any infringement.  The presence of other features in the accused product beyond the claimed elements does not avoid infringement, as long as every claimed element is present.  [**Jazz Proposes:** For example, a pencil without an eraser that infringes a patent claim would not become non-infringing

---

[26] Sources: *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions), *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)).

when an eraser is added to it.[27]  Likewise, a pharmaceutical formulation that infringes a patent claim would not become non-infringing if additional ingredients are added.][28]

[**Jazz Proposes:** Direct infringement does not require proof that the infringer intended to infringe or knew of the patent.  Put differently, an infringer's knowledge or intent is irrelevant.[29]

Further, the existence of an accused infringer's own patent does not constitute a defense to infringement of someone else's patent.  A patent grants only the right to exclude others and confers no right on its holder to make, use, or sell a product that infringes someone else's patent.[30]  Multiple patents can cover the same product.  Specifically, just because Avadel has patents does not mean that Lumryz cannot infringe Jazz's patents.31][32]

---

[27] Sources: *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1178 (Fed. Cir. 1991); *Free Motion Fitness, Inc. v. Cybex Intern., Inc.*, 423 F.3d 1343, 1347 (Fed. Cir. 2005).

[28] Avadel's footnote: Avadel does not agree that this language should be included.

[29] Source: *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 761 n.2 (2011).

[30] Sources: *Bio-Technology General Corp. v. Genentech*, 80 F.3d 1553, 1559 (Fed. Cir. 1996); *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 879 n. 4 (Fed. Cir. 1991).

31 *Id.*

[32] Avadel's footnote: Avadel does not agree that this language should be included.

5.     **INVALIDITY**

5.1     **INVALIDITY GENERALLY**[33]

I will now instruct you on the rules that you must follow in deciding whether or not Avadel has proven that the asserted claims of the patents-in-suit are invalid.

As I previously told you, to prove that a claim of a patent is invalid, the party challenging the validity must persuade you by clear and convincing evidence.  The law presumes that the patent claims are valid.  [**Jazz Proposes:** The law presumes that the Patent Office acted correctly in issuing the patent.  The fact that a patent application is rejected or amended before the patent is issued has no bearing on its ultimate validity.[34]][35]

You should consider whether any evidence relating to invalidity is materially new compared to the evidence considered by the U.S. Patent and Trademark Office ("USPTO"). *[**Avadel Proposes:**  Where the USPTO did not previously have all the material facts before it,*

---

[33] Source: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions).

[34]  Source: *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

[35] Avadel's footnote: Avadel does not agree that this language should be included.

*Avadel's burden to prove invalidity by clear and convincing evidence may be easier to sustain.[36]]*
*[37] [38]*

[**Jazz Proposes:** Avadel has asserted as a defense to patent infringement in this case that each asserted claim is invalid.  Because each of the asserted claims is presumed valid independently of the validity of each other claim, this puts the burden on Avadel of proving invalidity by clear and convincing evidence on a claim-by-claim basis that each of the asserted claims is invalid.  As I instructed you earlier, clear and convincing evidence is evidence that leads to an abiding conviction that the truth of the factual contentions are highly probable and instantly tilts the scales in the favor of invalidity when weighed against the opposing evidence.  It is a higher burden of proof than preponderance of the evidence.][39]

[*Avadel Proposes: Like infringement, you must determine whether each asserted claim is invalid on a claim-by-claim basis, with the exception of Avadel's contentions that the patents are invalid for improper inventorship and/or derivation, which are determined on a patent-by-patent*

---

[36] Source: *United States v. Gilead Sciences, Inc.*, C.A. No. 19-2103 (MN), D.I. 464 (Final Jury Instructions); *Microsoft Corp. v. I4i Ltd. P'ship*, 564 U.S. (2011), slip. op. at 17-18 ("Simply put, if the PTO did not have all material facts before it, its considered judgment may lose significant force. And, concomitantly, the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain. In this respect, although we have no occasion to endorse any particular formulation, we note that a jury instruction on the effect of new evidence can, and when requested, most often should be given. When warranted, the jury may be instructed to consider that it has heard evidence that the PTO had no opportunity to evaluate before granting the patent…. the jury may be instructed to evaluate whether the evidence before it is materially new, and if so, to consider that fact when determining whether an invalidity defense has been proved by clear and convincing evidence.") (internal citations omitted).

[37]  Jazz's footnote: Jazz does not agree that this language should be included as it is misleading and has no basis in the evidence.  "[T]he ultimate burden of proof does not change." *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012).

[38] Avadel's response: Avadel's instruction is proper according to *United States v. Gilead Sciences, Inc.* and *Microsoft Corp. v. I4i Ltd. P'ship*, *supra* note 35.

[39] Avadel's footnote: Avadel does not agree that this language should be included.

basis.  As I instructed you earlier, there are independent claims and dependent claims in a patent. Finding the broader independent claim to be invalid does not mean the narrower dependent claims are also invalid.  However, if you find a narrower claim to be invalid, you must find the broader independent claim from which it depends is also invalid.

      Claims are construed in the same way for determining infringement as for determining invalidity.  You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity.[40]] [41]

---

[40] Source: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions).

[41]  Jazz's footnote: Jazz does not agree this language should be included.

## 5.2     PERSPECTIVE OF ONE OF ORDINARY SKILL IN THE ART

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time the invention was made.  You may have heard the phrase "person of ordinary skill in the art" abbreviated as "P-O-S-A" or "POSA" throughout the trial.

In this case, the parties agree that a person of ordinary skill in the art would have had a doctorate degree (Ph.D. or Pharm.D.) in pharmaceutical sciences or a related field and around one year of relevant experience, a Master's Degree with 3-5 years of experience in the pharmaceutical or related industries, or a Bachelor's degree with 6-10 years of experience in the pharmaceutical or related industries.  A POSA would typically have been a member of an inter-disciplinary team of ordinarily skilled scientists involved in drug research and development and would have had direct access to other scientists with ordinary skills in, among other things, pharmacokinetics, pharmacodynamics, drug delivery, and other pharmaceutical characteristics.  The team would also have included or had access to an ordinarily skilled individual with a medical degree with experience in treating sleep disorders, particularly of narcolepsy.

### 5.3 PRIOR ART[42]

Prior art is the legal term used to describe what others had done in the field before the invention was made.  Prior art is the general body of knowledge in the public domain, such as articles, products, or other patents, before the invention was made.  The prior art need not have been available to every member of the public, but it must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

For the asserted claims, prior art includes any of the following items received into evidence during trial:

- Any product, method, or teaching known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention was made; or

- Any product, method, or teaching patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the earliest effective filing date of the patents-in-suit.

Avadel has the burden of proving that a reference art qualifies as pertinent prior art.  To do so, Avadel must prove that each piece of alleged prior art is from the same field of endeavor as the claimed inventions, or that the reference is reasonably pertinent to the particular problem with which the inventor of the claimed inventions was involved.[43]  [**Jazz proposes**: The specifications underlying the respective claims cannot be considered prior art.[44]][45]

---

[42] Source: *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

[43]  Source: *Sanofi-Aventis Deutschland GmbH v. Mylan Pharms. Inc.*, 66 F.4th 1373, 1377 (Fed. Cir. 2023).

[44]  Source: *Noelle v. Lederman*, 355 F.3d 1343, 1347 (Fed. Cir. 2004).

[45] Avadel's footnote: Avadel does not agree this language should be included.

### 5.4    WRITTEN DESCRIPTION

The patent law contains certain requirements for the part of the patent called the specification.

[**Jazz Proposes:**[46]

To succeed with respect to its written description defenses, Avadel must show, on a claim-by-claim basis and by clear and convincing evidence, that a person having ordinary skill in the art reading the patent specification as of the effective filing date would not have recognized that it describes the invention as it is claimed.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date. The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or the inventor to have physically and actually made the claimed invention. It is not necessary to describe every formulation that might fall within the scope of the claims in order to satisfy the written description requirement as long as the patent includes a sufficient number of representative formulations or a common structural feature, such that a person of ordinary skill in the art would understand, from reading the patent, that the inventor invented the claimed inventions. The level of disclosure required

---

[46] Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions); *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)); *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) (en banc); *Capon v. Eshhar*, 418 F.3d 1349, 1359 (Fed. Cir. 2005); *Alcon Research, Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1190-91 (Fed. Cir. 2014).

depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.  A patentee need only describe the invention as claimed, and need not describe unclaimed elements.[47]

Where a patent specification gives a POSA a reason to select from a small number of options to achieve a particular claimed embodiment, then that teaching is what is known as a "blaze mark" that provides written description support for the claim.[48]  It is common for patentees to disclose a range of possible embodiments, and a patentee is free to selectively claim one particular embodiment.[49]

An adequate written description may be based on examples that are "substantially equivalent" to what has been claimed.[50] ]

[**The parties are in agreement on this paragraph**: During the patent application process, the applicant may keep the originally filed claims, or change the claims between the time the patent application is first filed and the time a patent is issued.  An applicant may amend the claims or add new claims provided there is sufficient support in the specification for any added claims.  The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.]

---

[47] Source: *Amgen v. Hoechst Marion Roussel*, 314 F.3d 1313, 1333 (Fed. Cir. 2003).

[48] Source: *Singh v. Brake*, 317 F.3d 1334, 1344 (Fed. Cir. 2003); *see also Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1065 (Fed. Cir. 2020) (rejecting argument that specification lacked the "required blaze marks" where "the specification identified four preferred fusion proteins, including the claimed p75-IgG1 fusion protein").

[49]  *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 276 F. Supp. 3d 629, 656 (E.D. Tex. 2017), *aff'd*, 739 F. App'x 643 (Fed. Cir. 2018).

[50]  Source: *Nalpropion Pharms., Inc. v. Actavis Labs. FL, Inc.*, 934 F.3d 1344, 1350 (Fed. Cir. 2019).

[**The parties are in agreement on this sentence:** The hallmark of written description is disclosure, which is an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.[51]]

[**The parties are in agreement on this paragraph**: In it unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; only enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention.  However, written description support for the essential elements of the invention must be disclosed in the specification itself, and not merely present in the prior art.[52]]

[**The parties are in agreement on this paragraph**: In this case, the patent claims are directed to a class or set of oxybate formulations, which can be referred to as a "genus."  Although the specification need not describe every species in a genus to meet the written description requirement, it must show that the inventors have truly invented the genus—i.e., that they have conceived of and described sufficient representative species encompassing the breadth of the genus.]]

[*Avadel Proposes:*[53]

---

[51] *Ariad Pharms., Inc. v. Eli Lilly and Co*., 598 F.3d 1336, 1351 (Fed. Cir. 2010).

[52] *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998).

[53] Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)); *CAP-XX, LTD. v. Maxwell Technologies, Inc.*, C.A. No. 19-1733-JLH, D.I. 314 (Final Jury Instructions); *Idenix Pharms. LLC v. Gilead Scis., Inc.*, 1:14-cv-00846-LPS, D.I. 516 (Final Jury Instructions); *Amgen Inc. et al v. Sanofi et al*; C.A. No. 1-14:ccv-01317-RGA, D.I. 299 (Final Jury Instructions).

*One requirement is that a patent must include an adequate written description of the full scope of the claimed invention. The written description requirement helps to ensure that the patent applicant actually invented the full scope of the claimed subject matter. To satisfy the written description requirement, the patent specification must describe every limitation of a patent claim in sufficient detail, although the exact words of the claim need not be used. It is not sufficient that the specification discloses only enough to make the claimed invention obvious to a person having ordinary skill.*

*Avadel contends that the asserted claims of the patents-in-suit are invalid for lack of written description. Avadel has the burden of proving lack of adequate written description for each asserted claim by clear and convincing evidence.*

[**The parties are in agreement on this paragraph**: During the patent application process, the applicant may keep the originally filed claims, or change the claims between the time the patent application is first filed and the time a patent is issued. An applicant may amend the claims or add new claims provided there is sufficient support in the specification for any added claims. The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.]

 [**Avadel proposes:** *The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that the application describes the full scope of the claimed invention as it is finally claimed in the issued patent, and that the inventor actually possessed that full scope by the filing date of the relevant application. The specification itself must demonstrate possession.*[54]]

---

[54] *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1362 (Fed. Cir. 2010).

[**The parties are in agreement on this sentence:** The hallmark of written description is disclosure, which is an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.[55]]

[**Avadel Proposes**: *Inventor testimony cannot establish written description support where none exists in the four corners of the specification.[56]*]

[**The parties are in agreement on this paragraph**: In it unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; only enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention.  However, written description support for the essential elements of the invention must be disclosed in the specification itself, and not merely present in the prior art.[57]]

[**Avadel Proposes:** *In evaluating whether the specification has provided adequate written description, you may consider such factors as: (1) the nature and scope of the patent claims; (2) the complexity, predictability, and maturity of the technology at issue; (3) the existing knowledge in the relevant field; and (4) the scope and content of the prior art.]*

[**The parties are in agreement on this paragraph**: In this case, the patent claims are directed to a class or set of oxybate formulations, which can be referred to as a "genus."  Although the specification need not describe every species in a genus to meet the written description requirement, it must show that the inventors have truly invented the genus—i.e., that they have

---

[55] *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010).

[56] Nuvo Pharm. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs. Inc., 923 F.3d 1368, 1381 (Fed. Cir. 2019).

[57] *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998).

conceived of and described sufficient representative species encompassing the breadth of the genus.]

[**Avadel Proposes**: *For genus claims, the specification must also provide sufficient "blaze marks" to guide a reader through the forest of disclosed possibilities toward the claimed compound.[58] When assessing whether the specification contains adequate blaze marks, it is improper to work backward from the knowledge of the claims.[59] The proper inquiry is whether the written description that was filed in the Patent Office as of the priority date contains sufficient blaze marks that points the reader toward the claimed invention, not whether one can read the claims and work backward to search the specification for possible references to those claim elements.[60]*

*When determining whether the specification discloses the invention, the claim must be viewed as a whole. While the written description requirement does not require that the specification recite the claimed invention in any particular way, a patent owner cannot show written description support by pointing to disparate disclosures that a person of ordinary skill might have been able to combine to arrive at the claimed invention.[61] Instead, the specification must present each claim as an integrated whole.[62]*

---

[58]*PureCircle v. Sweegen*, 2024 U.S. App. LEXIS, at *4 (Fed. Cir. 2024; *Idenix Pharms. LLC v. Gilead Scis., Inc.*, 1:14-cv-00846-LPS, D.I. 516 (Final Jury Instructions).

[59] Novozymes A/S v. DuPont Nutrition Biosciences APS, 723 F.3d 1336, 1349 (Fed. Cir. 2013).

[60] *Id.*

[61] *Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1349 (Fed. Cir. 2013); *Flash-Control, LLC v. Intel Corporation*,  Fed.Appx., 2021 WL 2944592, *4 (Fed. Cir. 2021).

[62] Novozymes A/S v. DuPont Nutrition Biosciences APS, 723 F.3d 1336, 1349 (Fed. Cir. 2013).

*The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or groups of claims.  If you find that an asserted claim did not comply with the written description requirement, you must find that claim invalid.*]

### 5.5    ENABLEMENT

[**Jazz Proposes:**[63]

A patent must disclose information to enable or teach persons of ordinary skill in the field of the invention as of the effective filing date to make and use the full scope of the claimed invention without undue experimentation.  This requirement is known as the "enablement" requirement.  As the party challenging validity, Avadel bears the burden of establishing, on a claim-by-claim basis and by clear and convincing evidence, that the specification fails to satisfy the enablement requirement.

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the field of the invention.  Thus, a patent need not expressly state information that persons of ordinary skill would be likely to know or could obtain, such as what was well known in the art and what would have already been available to the public.  A patent need not teach, and preferably omits, what is well-known in the art.  In addition, the patent disclosure need not enable persons of ordinary skill to make a commercially viable product or to otherwise meet the standards for success in the commercial marketplace.  There is no requirement that a patent set out every possible embodiment or method of achieving the claimed invention; so long as the patent specification discloses at least one method for making and using the claimed inventions, and that method reasonably correlates to the entire scope of the claims, then the claimed inventions are enabled.

---

[63]  Sources: *Complete Genomics, Inc. v. Illumina, Inc.*, C.A. No. 19-970-MN, D.I. 404 (Final Jury Instructions) and *United States v. Gilead Sci., Inc.*, C.A. No. 19-2103-MN, D.I. 464 (Final Jury Instructions).

Factors that you may consider in determining whether Avadel has met its clear and convincing evidentiary burden for enablement are:

1.    the quantity of experimentation necessary;

2.    the amount of direction or guidance disclosed in the patent;

3.    the presence or absence of working examples in the patent;

4.    the nature of the invention;

5.    the state of the prior art;

6.    the relative skill of those in the art;

7.    the predictability of the art; and

8.    the breadth of the claims.

No one or more of these factors is alone dispositive.  Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.

Extensive experimentation does not necessarily render the experiments unduly extensive where the experiments involve repetition of known or commonly used techniques.[64]  Significant experimentation is not uncommon in the context of finding effective solutions in the pharmaceutical industry.[65]  Inventors are not required to provide a detailed recipe for preparing every conceivable embodiment of their invention.[66]  The specification need only teach one mode of making and using a claimed composition.[67]  A patent does not need to guarantee that the

---

[64]   Source: *Cephalon, Inc. v. Watson Pharms., Inc*., 707 F.3d 1330, 1338 (Fed. Cir. 2013).

[65]   Source: *GlaxoSmithKline v. Hikma Pharm.*, No. 12-1965, 2012 WL 3561970, at *29 (D.N.J. Aug. 16, 2012).

[66]   Source: *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 555 F. App'x 961, 967 (Fed. Cir. 2014).

[67]   Source: *Amgen Inc. v. Hoechst Marion Roussel, Inc*., 314 F.3d 1313, 1335 (Fed. Cir. 2003).

invention works for a claim to be enabled.[68]  An invention may be patented before it is actually physically made by the inventor.[69]  Similarly, a patentee is not required to provide actual working examples of the invention in the specification.[70]

[**The parties are in agreement on this paragraph:** In considering whether a patent claim satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the art.   A patent need not expressly state information that skilled persons would likely know or could obtain at the time of the claimed invention.  However, a patentee cannot rely on the prior art or the knowledge of a person of skill in the art to enable novel aspects of the invention.[71]]

[**The parties are in agreement on this paragraph:** In this case, the patent claims are directed to a class or set of oxybate formulations, which can be referred to as a "genus," and recite functions for the members of the genus in terms of their ability to sustain or modify the release of oxybate.  In order to be enabling, the patent specification must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of each claimed genus without having to conduct undue experimentation.[72]  The fact that some experimentation may be required for a skilled person to make or use the claimed invention does not mean that a patent's specification fails to provide sufficient teaching to meet the enablement requirement.  However, even routine experimentation can be undue if a person of skill in the art would have to undertake

---

[68]   Source: *Alcon Rsch. Ltd. v. Barr Labs, Inc.*, 745 F.3d 1180, 1189 (Fed. Cir. 2014).

[69]   Source: *Alcon Rsch. Ltd. v. Barr Labs, Inc.*, 745 F.3d 1180, 1189 (Fed. Cir. 2014).

[70]   Source: *Alcon Rsch. Ltd. v. Barr Labs, Inc.*, 745 F.3d 1180, 1189 (Fed. Cir. 2014).

[71] *Creative Kingdoms, LLC v. ITC*, 588 Fed. App'x. 993, 995 (Fed. Cir. 2014).

[72] *Amgen Inc. et al v. Sanofi et al*; 1-14:cv-01317-RGA, D.I. 812 (Final Jury Instructions); *see also MagSil Corp. v. Hitachi Glob. Storage Techs.*, Inc., 687 F.3d 1377, 1381 (Fed. Cir. 2012); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1378 (Fed. Cir. 2007).

trial-and-error experimentation to determine if a particular formulation could perform the recited functions.  A disclosure of merely a starting point for further research does not meet the enablement requirement.[73]]

[**Avadel Proposes:** [74]

A patent specification must also describe the claimed invention in such full, clear, concise and exact terms to enable a person of ordinary skill in the art to make and use the invention without undue experimentation.  This requirement is known as the enablement requirement.  If the full scope of a patent claim is not enabled, it is invalid.

The law says that the more a party claims, the broader the exclusivity it demands, the more it must enable.  This ensures that the public knowledge is enriched by the patent specification to a degree at least commensurate to the scope of the claims.[75]  Therefore, if a patent claims an entire class of compositions, the patent's specification must enable a person skilled in the art to make and use the entire class.

Avadel contends that the Asserted Claims of Jazz's Patents are invalid for lack of enablement.  Avadel must provide by clear and convincing evidence that the claims are not enabled.]

---

[73] *Baxalta v. Genentech*, 579 F. Supp. 3d 595, 622 (Fed. Cir. 2023).

[74]  Sources: *Amgen v. Sanofi*, 598 U.S. 594, 612 (2023); *W.R. Grace & Co.-Conn. V. Elysium Health, Inc.*, 1:20-cv-01098-GBW-JLH, D.I. 310 (Final Jury Instructions); *CAP-XX, LTD. v. Maxwell Technologies, Inc.*, C.A. No. 19-1733-JLH, D.I. 314 (Final Jury Instructions); *Twinstrand Biosciences Inc. et al v. Guardant Health, Inc.*, 1:21-cv-01126-GBW-SRF, D.I. 494 (Final Jury Instructions); *Idenix Pharms. LLC v. Gilead Scis., Inc.*, 1:14-cv-00846-LPS, D.I. 516 (Final Jury Instructions); *Amgen Inc. et al v. Sanofi et al*; 1-14:cv-01317-RGA, D.I. 299 (Final Jury Instructions).

[75] *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008).

[**The parties are in agreement on this paragraph:** In considering whether a patent claim satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the art.   A patent need not expressly state information that skilled persons would likely know or could obtain at the time of the claimed invention.  However, a patentee cannot rely on the prior art or the knowledge of a person of skill in the art to enable novel aspects of the invention.[76]]

*[**Avadel Proposes:**  In this case, the patent claims are directed to a class or set of oxybate formulations, which can be referred to as a "genus," and recite functions for the members of the genus in terms of their ability to sustain, control, or modify the release of oxybate.  In order to be enabling, the patent specification must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of each claimed genus without having to conduct undue experimentation.[77]  The fact that some experimentation may be required for a skilled person to make or use the claimed invention does not mean that a patent's specification fails to provide sufficient teaching to meet the enablement requirement.  However, even routine experimentation can be undue if a person of skill in the art would have to undertake trial-and-error experimentation to determine if a particular formulation could perform the recited functions. A disclosure of merely a starting point for further research does not meet the enablement requirement.[78]]*

*In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors, including:*

---

[76] *Creative Kingdoms, LLC v. ITC*, 588 Fed. App'x. 993, 995 (Fed. Cir. 2014).

[77]*Amgen Inc. et al v. Sanofi et al*; 1-14:cv-01317-RGA, D.I. 812 (Final Jury Instructions); *see also MagSil Corp. v. Hitachi Glob. Storage Techs.*, Inc., 687 F.3d 1377, 1381 (Fed. Cir. 2012); *Liebel-Flarsheim Co. v. Medrad, Inc*., 481 F.3d 1371, 1378 (Fed. Cir. 2007).

[78] *Baxalta v. Genentech*, 579 F. Supp. 3d 595, 622 (Fed. Cir. 2023).

*(1) The time and cost of any necessary experimentation*

*(2) How routine any necessary experimentation is in the field*

*(3) The presence or absence of working examples in the patent*

*(4) The amount and sufficiency of guidance presented in the patent*

*(5) The nature and predictability of the field*

*(6) The level of ordinary skill in the field; and*

*(7) The breadth of the claims.*

*No one or more of these factors is alone dispositive.  Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.  Difficulties by persons of ordinary skill in the art, including the inventors, in practicing the claimed invention can support a conclusion that the amount of experimentation required is undue.[79]  Moreover, while the patent disclosure need not enable persons of ordinary skill to make a commercially viable product[80] if an inventor attempts but fails to enable his or her invention in a commercial product, that is strong evidence that the specification lacks enablement.[81]  You may also consider the presence of inoperable embodiments within the scope of the claims when assessing whether the amount of experimentation is undue.[82]*

---

[79] *ALZA Corp. v. Andrx Pharmaceuticals, LLC,* 603 F.3d 935, 942 (Fed. Cir. 2010); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1379 (Fed. Cir. 2007).

[80] *Complete Genomics, Inc. v. Illumina, Inc.*, C.A. No 19-970-MN, D.I. 404 (Final Jury Instructions).

[81] *Ormco v. Align Tech., Inc.*, 498 F. 3d 1307, 1319 (Fed. Cir. 2007); *Atlas Powder Co. v. E.I. Du Pont De Nemours & Co.*, 750 F.2d 1569, 1576 (Fed. Cir. 1984).

[82] *Pharm. Res., Inc. v. Roxane Labs., Inc.*, 253 Fed. Appx. 26, 30 (Fed. Cir. 2007).

*Claims may be invalid for lack of enablement where a large part of the claim scope is directed toward inoperative embodiments.[83]*

*You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the respective priority dates of the asserted patents, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention. If you find one or more of the asserted claims does not comply with the enablement requirement, you must find those claims invalid.]*

---

[83] *Pharm. Res., Inc. v. Roxane Labs., Inc*., 253 Fed. Appx. 26, 30 (Fed. Cir. 2007).

### 5.6   OBVIOUSNESS[84]

Under the patent laws, a person is granted a patent only if the invention claimed in the patent is both new and not obvious in light of what came before.  Even though an invention has not been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the art at the time the invention was made.  Obviousness may be proven by considering more than one item of prior art.  In this case, Avadel contends the asserted claims of the patents-in-suit are invalid as being obvious.

Avadel must prove by clear and convincing evidence that the asserted claims of the patents-in-suit would have been obvious to a person of ordinary skill in the art at the time the invention was made.  [**Jazz proposes:** Each fact forming the factual foundation for a finding of obviousness must be established by clear and convincing evidence.[85]][86]  In determining whether the claimed invention was obvious, consider each claim separately.

The issue is not whether the claimed invention would be obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.  The purpose of conducting the obviousness analysis from the perspective of one skilled in the art is to assure an appropriate perspective of the decision maker, and to focus on conditions as they existed when the invention was made.[87]  Good

---

[84] Source: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions).

[85]  Source:  *AstraZeneca Pharm. LP v. Anchen Pharm., Inc.*, No. 10-1835, 2012 WL 1065458, at *20 (D.N.J. Mar. 29, 2012), aff'd, 498 F. App'x 999 (Fed. Cir. 2013).

[86] Avadel footnote: Avadel does not agree this language should be included.

[87]  Source: *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 956 (Fed. Cir. 1997).

ideas may well appear "obvious" after they have been disclosed, despite having been previously unrecognized.[88]

In arriving at your decision on the issue of whether the asserted claims would have been obvious to a person of ordinary skill in the art, and therefore, are invalid, you must consider: (1) the scope and content of the prior art; (2) the level of ordinary skill in the pertinent art; and (3) the differences between the claimed invention and the prior art.

To determine the scope and content of the prior art, you should determine what prior art was reasonably pertinent to the particular problems the inventor faced.  A person of ordinary skill in the art is presumed to have knowledge of the pertinent prior art.

I have already instructed  you on the level of ordinary skill in the art.  You are to apply that definition when deciding whether the asserted claims would have been obvious.

You must next consider the differences, if any, between the prior art and asserted claims. Though it is proper for you to consider differences between the claimed invention and the prior art, you should not focus on only the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.

A claim is not proven obvious merely by demonstrating that each of the elements in a claim was known in the prior art.  You must consider the invention as a whole.  Most, if not all, inventions rely on known building blocks, and inventions are very often – almost out of necessity – combinations of what is already known.  [**Jazz Proposes:**  Unpredictability in the relevant art can demonstrate non-obviousness.[89]  Evidence showing unpredictability in the art can suggest that one

---

[88]   Source: *Arkie Lures, Inc. v. Gene Larew Tackle, Inc*., 119 F.3d 953, 956 (Fed. Cir. 1997).

[89]  Source: *Honeywell Int'l Inc. v. Mexichem Amanco Holding S.A. DE C.V.*, 865 F.3d 1348, 1354 (Fed. Cir. 2017).

of ordinary skill would not have been motivated to combine the references with a reasonable expectation of success.[90]  One of ordinary skill would not have had a reasonable expectation of success where they would no more have expected failure than success.[91]][92]

If you find that the available prior art shows each of the limitations of the asserted claims, you consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art to combine the known elements in the same manner as the asserted claims.  This is often referred to as "motivation to combine."  The motivation to modify the prior art to arrive at the asserted claim need not be the same motivation that the inventor had. Additionally, a person of ordinary skill in the art must have had a reasonable expectation of success in combining the known elements in the way the asserted claim does.  [**Jazz Proposes:** Without knowledge of a problem to be solved, a POSA would have had no motivation to arrive at the claimed inventions.  Even an obvious solution does not render an invention obvious if the problem solved was previously unknown.[93]][94]

In arriving at your decision on the issue of whether the asserted claims would have been obvious to a person of ordinary skill in the art, you may take into account such factors as:

1.       Whether the asserted claims were merely the predictable result of using prior art elements according to their known functions;

---

[90]   Source: Honeywell Int'l Inc. v. Mexichem Amanco Holding S.A. DE C.V., 865 F.3d 1348, 1354 (Fed. Cir. 2017).

[91]   Source: Honeywell Int'l Inc. v. Mexichem Amanco Holding S.A. DE C.V., 865 F.3d 1348, 1355-56 (Fed. Cir. 2017).

[92] Avadel's footnote: Avadel does not agree that this language should be included.

[93]   Sources: *Novartis Pharm. Corp. v. Watson Labs., Inc.*, 611 F. App'x 988, 995 (Fed. Cir. 2015); Leo Pharm. Prods., Ltd. v. Rea, 726 F.3d 1346, 1356-57 (Fed. Cir. 2013).

[94] Avadel's footnote: Avadel does not agree that this language should be included.

2.      Whether the asserted claims provide an obvious solution to a known problem in the relevant field;

3.      Whether the prior art teaches or suggests the desirability of combining elements in the asserted claims;

4.      Whether the prior art teaches away from combining elements in the asserted claims; and

5.      Whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

You should not consider what is known today or use what is taught in the patent as a road map for selecting and combining items of prior art.  Do not use hindsight; instead, put yourself in the place of a person of ordinary skill in the art as of the filing date of the invention.  **[Jazz Proposes:**  In other words, you should only consider what was known prior to the invention date, without the benefit of the asserted claims or what the asserted patents teach.  The inventor's own path itself never leads to a conclusion of obviousness; that is hindsight.  What matters is the path that the POSA would have followed, as evidenced by the pertinent prior art.[95]  The patent challenger cannot use the challenged patent as a roadmap to reconstruct the claimed invention using disparate elements from the prior art.[96]  Instead, in order to show obviousness, Avadel bears the burden of establishing by clear and convincing evidence that a POSA would have been motivated to combine the teachings of the prior art references to achieve the claimed invention,

---

[95]  Source: *Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1296 (Fed. Cir. 2012).

[96]  Source: *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1361 (Fed. Cir. 2019).

and that the skilled artisan would have had a reasonable expectation of success in doing so.[97]  In simple terms, you should imagine a POSA sitting in a room with just the prior art, and no access to or knowledge of Jazz's patents, and ask if the POSA would have been motivated to come up with all claimed inventions and whether the POSA would have had a reasonable expectation of success in doing so.][98]

---

[97]  Source: *Millennium Pharm., Inc. v. Sandoz Inc.*, 862 F.3d 1356, 1366 (Fed. Cir. 2017).

[98] Avadel's footnote: Avadel does not agree that this language should be included.

## 5.7    INVENTORSHIP [99] [100]

[**Jazz Proposes**: Avadel contends that the inventors of the asserted claims derived the claimed inventions from Avadel's public patent filings.

It should be made clear at the outset that there is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the patent applicant's attorney has learned about during the prosecution of a patent application.[101]][102]

[**Avadel Proposes**: *Avadel contends that the '488 and '782 patents are invalid because of improper inventorship.[103]*][104]

Patents must name all of the true inventors, and only the true inventors, of the patent. This is known as the inventorship requirement. To prove invalidity of a patent because of improper inventorship, Avadel must demonstrate by clear and convincing evidence that the patent does not name all of the true inventors, or names inventor(s) who are not true inventor(s). In determining

---

[99]   Jazz only agrees to include this instruction (as well as the instruction in Section 5.9 below) in the event that its Motion *in Limine* No. 2 is denied.

[100] Sources: *CAP-XX, LTD. v. Maxwell Technologies, Inc.*, C.A. No. 19-1733-JLH, D.I. 314 (Final Jury Instructions); *ICU Medical, Inc. v. Rymed Tech., Inc.*, No. 1:07-cv-00468-LPS, D.I. 492 (Final Jury Instructions); *Plastipak Packaging, Inc. v. Premium Waters, Inc.*, 55 F.4th 1332, 1340 (Fed. Cir. 2022).

[101]   Source: *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988).

[102] Avadel's footnote: Avadel does not agree that this language should be included.

[103] Source: *CAP-XX, LTD. v. Maxwell Technologies, Inc.*, C.A. No. 19-1733-JLH, D.I. 314 (Final Jury Instructions).

[104]   Jazz's footnote: Jazz does not agree that this language should be included.

whether the inventorship requirement has been satisfied here, you should be guided by the following principles.

To be an inventor, one must make a significant contribution to the conception of at least one of the claims of the patent.  Conception is the mental formulation and disclosure by the inventor of a complete idea of the inventive solution.  An inventive solution is considered to be a complete idea when disclosure of the idea would enable anyone with ordinary skill in the art to make, use, or practice the invention.  Whether the contribution is significant is measured against the scope of the full invention.

All inventors, even those who contribute to only one claim or one aspect of one claim of a patent, must be listed on that patent. Failure to name a true inventor of any claim invalidates the entire patent.[105]  [*Avadel Proposes: For example, if Avadel proves that the actual inventor of one claim of the '488 patent is not named as an inventor, then all of the claims of the '488 patent are invalid for improper inventorship.]* [106]

In making the determination whether the patents-in-suit are invalid for lack of proper inventorship, you must consider each patent in its entirety and any related evidence and testimony. However, testimony alone is insufficient to support a claim for improper inventorship.  A claim for improper inventorship must be supported by corroborating evidence.  This corroborating evidence can include physical, documentary, or circumstantial evidence, or reliable testimony from individuals other than the interested party.

[**Jazz Proposes:** If you determine that the asserted claims of the '488 patent had written description support as of Jazz's asserted 2011 priority date, then Avadel cannot prove incorrect

---

[105] Plastipak Packaging, Inc. v. Premium Waters, Inc., 55 F.4th 1332, 1340 (Fed. Cir. 2022).

[106]   Jazz's footnote: Jazz does not agree that this language should be included.

inventorship for the asserted claims of the '488 patent.  Likewise, if you determine that claim 24 of the '782 patent had written description support as of Jazz's asserted 2016 priority date, then Avadel cannot prove incorrect inventorship of that claim.][107]

---

[107] Avadel's footnote: Avadel does not agree that this language should be included.

## 5.8   DERIVATION[108]

Avadel contends that the asserted claims of the '488 patent are invalid because the inventors named on those patents "derived" the subject matter at issue in those patents from another person.  The patent laws require that the inventors named on a patent be the true inventors of the invention covered by the patent claims. Inventors named on a patent are not the true inventors if they derived the invention from someone else.  Avadel must prove this defense by clear and convincing evidence.

[**Jazz Proposes**:  It should be made clear at the outset that there is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the patent applicant's attorney has learned about during the prosecution of a patent application.] [109]][110]

In determining whether the inventors derived the invention from someone else, you should be guided by the following principles.

An invention is said to be "derived" from another person if that other person or other people (1) conceived of the patented invention and (2) communicated that conception to one of the inventors named in the patent. Conception of an invention occurs when a person has formed the

---

[108] Sources: Chrimar Systems, Inc. et al. v. Alcatel-Lucent Enterprise, USA, Inc., 6:15-cv-00163-JDL, D.I. 350 (Final Jury Instructions); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1577 (Fed. Cir. 1997); ICU Medical, Inc. v. Rymed Tech., Inc., No. 1:07-cv-00468-LPS, D.I. 492 (Final Jury Instructions); Price v. Symsek, 988 F.2d 1187, 1190 (Fed. Cir. 1993); OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1401-02 (Fed. Cir. 1997).

[109]   Source: *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988).

[110] Avadel's footnote: Avadel does not agree that this language should be included.

idea of how to make and use every aspect of the patented invention, and all that is required is that it can be made, without the need for further inventive effort. Communication of the conception occurs when it enables one of ordinary skill in the art to make, use, and practice the patented invention.  The communication may be made via public disclosure. If the named inventors derived the patented invention from someone else, then the patent is invalid.

[**Avadel Proposes:** *If you find that Avadel has proved that the named inventors derived any claim in a patent from someone else, then you must find that that patent is invalid.*[111]] [112]

[**Jazz Proposes:** If you determine that the asserted claims of the '488 patent had written description support as of Jazz's asserted 2011 priority date, then Avadel cannot prove incorrect derivation for those asserted claims because Avadel's patent filings would not be prior art.][113]

---

[111] Source:  *Plastipak Packaging, Inc. v. Premium Waters, Inc.*, 55 F.4th 1332, 1340 (Fed. Cir. 2022).

[112]   Jazz's footnote: Jazz does not agree that this language should be included.

[113] Avadel's footnote: Avadel does not agree that this language should be included.

6.    **PATENT DAMAGES**

6.1    **DAMAGES INTRODUCTION**[114]

All the instructions that I have given you up to this point have been about determining liability, meaning the determination as to whether Avadel has infringed the asserted claims of Jazz's patents and whether those asserted claims are valid. If you find that Avadel infringed any valid claim of the asserted patents, you must then consider what amount of damages to award to Jazz for Avadel's past infringement.

I will instruct you now on how to determine the amount of damages, if any. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

[**Jazz Proposes:** There is no requirement in this country that a patentee like Jazz make, use, or sell its patented invention for damages to occur. The purpose of damages is to put Jazz in about the same financial position it would have been if the infringement had not happened.][115]  The damages you award must be adequate to compensate Jazz for the infringement, and Jazz is in any event entitled to no less than a reasonable royalty.]

---

[114]   Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions), *Rite-Hite Corp. v. Kelly Co., Inc.*, 56 F.3d 1538, 1547 (Fed. Cir. 1995) (en banc);, *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1324 (Fed. Cir. 2009), *cert. denied*, 130 S.Ct. 1334 (2010) (quoting *Yale Lock Mfg. Co. v. Sargent*, 117 U.S. 536 (1886), *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd*., 807 F.3d 1283, 1304 (Fed. Cir. 2015) (citing *Dowagiac Mfg. Co. v. Minn. Moline Plow Co*., 235 U.S. 641, 647 (1915)), *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327-28 (Fed. Cir. 2014) (citations omitted), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015), AIPLA Model Patent Jury Instructions, Section 10.0, and FCBA Model Patent Jury Instructions, Section B.5.1.

[115]   Avadel's footnote: Avadel does not agree that this language should be included.

Damages are not meant to punish an infringer [**Jazz Proposes:** , but to fully compensate the patentee for the infringer's use of the patented invention].[116]

Jazz has the burden to establish [***Avadel Proposes:*** *each element of its damages, including*[117]][118] the amount of its damages, by a preponderance of the evidence.  In other words, you should award those damages that Jazz establishes that it more likely than not has suffered. Jazz must prove the amount of damages with reasonable approximation under the circumstances, but need not prove the amount of damages with mathematical precision.

Even if the evidence at trial does not support one or both parties specific royalty calculation, you are still required to determine what reasonable royalty [***Avadel Proposes:*** *, if any,*][119] is supported by the evidence.

Jazz seeks damages for Avadel's past patent infringement as measured by a reasonable royalty.  A reasonable royalty is defined as the money amount the parties would have agreed upon as a fee for use of the invention at the time prior to when infringement began.

I will now give you more detailed instructions regarding damages.

---

[116] Avadel's footnote: Avadel does not agree that this language should be included.

[117] Source: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions)

[118]  Jazz's footnote: Jazz does not agree that this language should be included.

[119]  Jazz's footnote: Jazz does not agree that this language should be included.

## 6.2    DATE DAMAGES BEGIN[120]

The parties agree that Avadel imported LUMRYZ[TM] into the United States no earlier than May 17, 2023 and began selling LUMRYZ[TM] by June 2, 2023.  Thus, if you find that the asserted patents are valid and infringed, you should calculate damages beginning as of the May-June 2023 timeframe.

---

[120]    Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions), and FCBA Model Patent Jury Instructions, Sections 5.10.

### 6.3     REASONABLE ROYALTY – GENERALLY[121]

Jazz is seeking damages in the form of a reasonable royalty in this case.

A royalty is a payment made to a patent owner by someone else in exchange for the rights to make, use, sell, or import a patented product.  A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the alleged infringement began.  It is a hypothetical royalty for the use of the patented technology by the alleged infringer, calculated as if the parties negotiated at arm's length as a willing licensor and a willing licensee on the date when the infringement began.  A reasonable royalty award should reflect the incremental value that the patented invention adds to the end product as a whole.  [**Avadel Proposes:**  *When the infringing methods have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features.  The total royalty rate must reflect the value attributable to the infringing features of the product or method, and no more.]*[122]

[**Jazz Proposes:**  If a patent confers new value on known or unpatented elements by creating a new product, then the value of known or unpatented elements do not need to be subtracted from the value of the patented invention as a whole when assessing damages.  Where a

---

[121]    Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions),    *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions), *Bayer Healthcare LLC v. Baxalta Inc*., 407 F. Supp. 3d 462, 480 (D. Del. 2019), *aff'd*, 989 F.3d 964 (Fed. Cir. 2021); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015), *Hanson v. Alpine Valley Ski Area, Inc*., 718 F.2d 1075, 1079 (Fed. Cir. 1983); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012); *AstraZeneca AB*, 782 F.3d at 1330, and 2024 AIPLA's Model Jury Instructions, Section 10.2.5.1.

[122]    Jazz's footnote: Jazz does not agree that this language should be included.

patent for a drug formulation covers the complete infringing product, there is no unpatented or non-infringing feature in the product.][123]

In considering this hypothetical negotiation, you should focus on what the expectations of the patent owner and the infringer would have been if they had entered into an agreement at that time, and had they both acted reasonably in their negotiations. You must assume that both parties to the hypothetical negotiation believed the patent to be valid and infringed and that both parties are willing to enter into a license agreement just before the infringement began.

Having that in mind, you should consider all the facts known and available to the parties at the time the infringement began. The reasonable royalty must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

---

[123] Avadel's footnote: Avadel does not agree that this language should be included.

## 6.4    FACTORS FOR DETERMINING REASONABLE ROYALTY[124]

In determining a reasonable royalty, you should consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patents-in-suit:

1.    Any royalties received by Jazz for the licensing of the patents- in-suit, proving or tending to prove an established royalty;

2.    The rates paid by Avadel to license other patents comparable to the patents-in-suit;

3.    The nature and the scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4.    Jazz's established policy and marketing program to maintain its patent exclusivity and its right to exclude others from using the patented inventions by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity;

5.    The commercial relationship between Jazz and Avadel at the time of the hypothetical negotiation, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter;

6.    The effect of selling the patented product in promoting sales of other products of Avadel, the existing value of the invention to the Jazz as a generator of sales of its non-patented items, and the extent of such collateral sales;

---

[124] Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120-21 (S.D.N.Y. 1970), and AIPLA Model Patent Jury Instructions, Section V.10.2.5.3.

7.     The remaining life of the patents-in-suit and the terms of the hypothetical license;

8.     The established profitability of the products made under the patents-in-suit, their commercial success, and their current popularity;

9.     The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results;

10.    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Jazz, and the benefits to those who have used the invention;

11.    The extent to which Avadel has made use of the invention, and any evidence probative of the value of that use;

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.    The portion of the realizable profit that should be credited to the inventions as distinguished from non-patented features, the manufacturing process, business risks, or significant features or improvements added by Avadel;

14.    The opinion and testimony of qualified experts; and

15.    The amount that Jazz as the patent owner and Avadel would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a

royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license. This may include the absence of commercially acceptable, non-infringing alternatives at the time of the hypothetical negotiation.

No one of these factors is dispositive, and you can and should consider the evidence that has been presented to you on each of these factors. You may also consider any other factors that would have increased or decreased the royalty that Avadel would have been willing to pay and that Jazz would have been willing to accept.

### 6.5    REASONABLY ROYALTY – NON-INFRINGING ALTERNATIVES OR SUBSTITUTES[125]

In determining a reasonable royalty, you may also consider evidence concerning the [***Avadel Proposes:*** *availability, or unavailability, and cost*[126]][127] [**Jazz Proposes:** absence] of acceptable non-infringing alternatives to using the patented invention.   A non-infringing alternative must have been available at the time of the infringement, must provide the same advantages as the patented invention, must have been acceptable to the specific purchasers of the infringing products, not the public in general, and must not infringe the patent.   [**Jazz Proposes:** Here, Avadel admits that there were not, and are not, any available non-infringing alternatives.][128]

---

[125] Sources: *First Quality Tissue, LLC v. Irving Consumer Prods. Ltd*., C.A. No. 19-0428-RGA, D.I. 380 (Final Jury Instructions); AIPLA Model Patent Jury Instructions, Section 10.2.5.8.

[126] Source: *First Quality Tissue, LLC v. Irving Consumer Prods. Ltd*., C.A. No. 19-0428-RGA, D.I. 380 (Final Jury Instructions).

[127] Jazz's footnote: Jazz does not agree that this language should be included.

[128] Avadel's footnote: Avadel does not agree that this language should be included.

### 6.6    REASONABLY ROYALTY – TIMING

[**Jazz Proposes:** The relevant date for the hypothetical negotiation is at the time Avadel's infringement began.  However, you may also consider in your determination of reasonable royalty any information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, the profits on sales that the patentee anticipated losing as a result of granting a license to the infringer, expected business value to the infringer, expected profits earned by the infringer, and non-infringing alternatives.[129]][130]

[**Avadel Proposes:** *The relevant date for the hypothetical negotiation is at the time the infringement began.  However, you may also consider in your determination of reasonable royalty any information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.[131]][132]*

---

[129]    Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions), *Exergen Corp. v. Kaz USA, Inc.*, 725 F. App'x 959, 940 (Fed. Cir. 2018); *Asetek Danmark A/S v. CMI USA Inc*., 852 F.3d 1352, 1362 (Fed. Cir. 2017), *Rite-Hite Corp. v. Kelly Co., Inc*., 56 F.3d 1538, 1554-55 (Fed. Cir. 1995) (en banc), *Bayer Healthcare LLC v. Baxalta Inc*., 407 F. Supp. 3d 462, 480 (D. Del. 2019), *aff'd*, 989 F.3d 964 (Fed. Cir. 2021), and AIPLA Patent Model Jury Instructions, Section 10.2.5.7.

[130] Avadel's footnote: Avadel does not agree that this language should be included.

[131]    Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions), *Asetek Danmark A/S v. CMI USA Inc*., 852 F.3d 1352, 1362 (Fed. Cir. 2017), *Rite-Hite Corp. v. Kelly Co., Inc*., 56 F.3d 1538, 1554-55 (Fed. Cir. 1995) (en banc), and AIPLA Patent Model Jury Instructions, Section 10.2.5.7.

[132] Jazz's footnote: Jazz does not agree that this language should be included.

### 6.7    PATENT DAMAGES INTEREST[133]

Neither party's calculations include interest.   Therefore, in arriving at your damages calculation, you should not consider interest in any way because it is the function of the Court to award interest.

---

[133]   Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions) and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

7.      **DELIBERATION AND VERDICT**[134]

7.1      **INTRODUCTION**

I have concluded the part of my instructions explaining the rules for considering some of the testimony and evidence.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

---

[134]    Sources: *Natera, Inc. v. ArcherDX, Inc. et al.*, C.A. No. 20-125-GBW, D.I. 605 (Final Jury Instructions), *Bd. of Regents, The University of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392, D.I. 326 (Final Jury Instructions (Phase I)), and *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, D.I. 526 (Final Jury Instructions).

## 7.2     UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges—judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  I will review it with you in a moment.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the Courtroom and my deputy will read aloud your verdict.  Place the completed verdict sheet in the envelope we will give you.  Do not show the completed verdict form to anyone or share it with anyone until you are in the Courtroom.

It is proper to add the caution that nothing said in these instructions, and nothing in the verdict form, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

### 7.3     DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that—your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

### 7.4     SOCIAL MEDIA

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, Blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.  In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

### 7.5      COURT HAS NO OPINION

Let me finish by repeating something I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.